**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOHN MOORE,**<br>**Plaintiff,**<br>**v.**<br>**CITY OF PHILADELPHIA, *et al*.,**<br>**Defendants.** | **CIVIL ACTION NO. 25-3303** |

**MEMORANDUM OPINION**

**Rufe, J.** **September 3, 2026**

Plaintiff John Moore filed the instant action against Defendants the City of Philadelphia ("the City") and Detectives Joe Walsh, William Coogan, William Gross, Raleigh Witcher, and Rossiter in their individual capacities, alleging violations under 42 U.S.C. § 1983. Mr. Moore claims that he was wrongfully incarcerated for nearly 27 years following his prosecution by Defendants. He raises claims under § 1983 of malicious prosecution (Count I), deprivation of liberty without due process and denial of a fair trial (Count II), civil rights conspiracy (Count III), failure to intervene (Count IV), municipal liability (Count V), and malicious prosecution under Pennsylvania state law (Count VI). Now, Defendant Walsh moves to dismiss the claims against him for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## I. BACKGROUND

For the purposes of the Motions to Dismiss, the Court takes all of Plaintiff's allegations in the Complaint as true.[1]

In December 1997, Mr. Moore was arrested for the July 7, 1996 robbery and murder of Sammy Cedano, based on the statements of fifteen-year-old James Lamb, who admitted to

---

[1] Compl. [Doc. No. 1].

participating in the murder and agreed to plead guilty to third-degree murder for the July 7, 1996 crimes.[2] In May 2000, Mr. Moore was tried and convicted in a bench trial of second-degree murder and other felonies for the July 7, 1996 murder of Sammy Cedano, and he was sentenced to life without parole.[3] Lamb, who testified against him, at times inconsistent with his previous statements, was sentenced to five to twenty years of incarceration based on his participation in the shooting and robberies.[4] Lamb served seven years before being granted parole.[5]

Mr. Moore advocated for his innocence of the crime, and after serving over twenty years, in April 2021, Mr. Moore obtained access to his "H" file, or police homicide file, and the District Attorney's Office ("DAO") file.[6] Through the files, Mr. Moore's counsel discovered that substantial evidence pointed to a man named Robert Turner, not Mr. Moore, as the perpetrator and Lamb's co-conspirator.[7] Police identified Turner months before Lamb named Mr. Moore in a statement.[8]

Among the evidence identifying Turner was a Narcotics Arrest Blotter, which listed people arrested for narcotics offenses in the area surrounding where the murder took place and noted each person's age, race, gender, address, and criminal identification number.[9] Only two individuals on the list fit the physical descriptions provided by three eyewitnesses to the crime, one of whom was Turner.[10] Turner had been arrested one month before the murder for the

---

[2] Compl. ¶¶ 40-45 [Doc. No. 1].
[3] *Id*. ¶¶ 46-52.
[4] *Id*. ¶¶ 46-53.
[5] *Id*. ¶ 53.
[6] *Id*. ¶ 54.
[7] *Id*. ¶ 55.
[8] *Id*.
[9] *Id*. ¶ 56.
[10] *Id*.

knowing and intentional possession of heroin.[11] This document was not provided to Mr. Moore, his defense counsel, or even the prosecution.[12]

Using the narcotics blotter, police identified an arrest photo of Turner from the date of his June 1996 narcotics arrest.[13] The photo is accompanied by a physical description of Turner, which matches the descriptions provided by eyewitnesses.[14] Mr. Moore claims that a photo of Turner was not shown to the witnesses, nor provided to the defense.[15] Neither Turner's name or address were provided to defense counsel, which prohibited Mr. Moore from identifying additional evidence pointing to Turner, including that Turner died in 1996 so Lamb could not have obtained a beneficial plea deal to testify against his actual co-perpetrator.[16]

In 2004, Lamb signed an affidavit in which he recanted his testimony against Mr. Moore and claimed that Defendants Witcher and Gross encouraged him to identify Mr. Moore as being involved in the crime.[17] In this affidavit, Lamb claimed that Mr. Moore was not present for or involved in the crime.[18]

Mr. Moore claims that the police, upon identifying Turner's potential involvement in the crime and his subsequent death, wanted to implicate a living co-conspirator with Lamb.[19] Despite three eyewitnesses being shown photos of Mr. Moore, including an eleven-year old interviewed by Defendant Walsh, not one identified him as being involved in the crime.[20] Mr. Moore alleges that police coerced Lamb to implicate him and that they were aware of Lamb's

---

[11] *Id.*
[12] *Id.*
[13] *Id.* ¶ 57.
[14] *Id.*
[15] *Id.*
[16] *Id.* ¶ 58.
[17] *Id.* ¶ 59.
[18] *Id.*
[19] *Id.* ¶¶ 60-61.
[20] *Id.* ¶ 62.

susceptibility to coercive interrogation tactics.[21] Lamb's false testimony against Mr. Moore is corroborated by several individuals both before and after his recantation.[22]

Additional exculpatory evidence was withheld from Mr. Moore and his defense at trial, including ballistics evidence, a police search of Mr. Moore's home, and eyewitnesses' failure to identify Mr. Moore in a photo array.[23]

On April 20, 2022, Mr. Moore filed an amended Post-Conviction Relief Act (PCRA) petition in the Philadelphia Court of Common Pleas based on the evidence obtained from the H-file and DAO file.[24] On June 27, 2023, Judge Scott DiClaudio granted Mr. Moore's PCRA petition, vacated his conviction for second-degree murder and other felonies, vacated his sentence to life without parole, and ordered a new trial.[25]

Mr. Moore maintains his innocence, yet he accepted a plea deal to a lesser charge of third-degree murder with a sentence of 13 to 26 years of incarceration, plus five years' probation, which amounted to time served at the time of his plea.[26] Mr. Moore was released from prison on July 11, 2023.[27]

In addition to the specific facts of Mr. Moore's arrest, conviction, vacated first conviction, and eventual plea deal, he alleges a pattern and practice of unconstitutional misconduct by the Philadelphia Police Department in homicide investigations.[28] These allegations are specific to Count V against the Philadelphia Police Department, so the Court does not recount them for purposes of ruling on Defendant Walsh's Motion to Dismiss.

---

[21] *Id.* ¶¶ 63-64.
[22] *Id.* ¶¶ 66-70.
[23] *Id.* ¶ 71.
[24] *Id.* ¶ 72.
[25] *Id.* ¶ 74.
[26] *Id.* ¶¶ 75-77.
[27] *Id.* ¶ 77.
[28] *Id.* ¶¶ 78-94.

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."[29] A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[30] The plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully.[31] Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "[32] The reviewing court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[33] The court must draw all inferences in favor of the plaintiff.[34] Yet, "threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" must be disregarded.[35]

## III. DISCUSSION

### A. Favorable Termination

Defendant Walsh first argues that the Complaint should be dismissed because he argues that Mr. Moore has not received a favorable termination of his conviction.

The Supreme Court ruled in *Heck v. Humphrey* that a claim for "damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions

---

[29] *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[30] *Id.* at 678
[31] *Id.*
[32] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).
[33] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 230, 233 (3d Cir. 2008)).
[34] *Dennis v. City of Philadelphia*, 19 F.4th 279, 284 (3d Cir. 2021).
[35] *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878-79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)).

whose unlawfulness would render a conviction or sentence invalid . . . is not cognizable under § 1983" unless "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."[36] Defendant Walsh argues that Mr. Moore's entire Complaint is barred by the *Heck* Doctrine.

1. Malicious Prosecution Counts

Mr. Moore's first § 1983 claim is malicious prosecution, which is squarely subject to *Heck*. In order to recover on a claim for malicious prosecution under § 1983, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceeding.[37] The Pennsylvania state law tort of malicious prosecution requires the first four elements of a constitutional malicious prosecution claim.[38]

One necessary element for both federal and state malicious prosecution claims is termination of the prior criminal proceeding in favor of the accused.[39] This requirement "avoids parallel litigation over the issues of probable cause and guilt ... and it precludes the possibility of the claimant succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction."[40]

[36] 512 U.S. 477, 486-87 (1994).
[37] *Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017).
[38] *Henderson v. City of Philadelphia*, 853 F. Supp. 2d 514, 518 (E.D. Pa. 2012).
[39] *Heck*, 512 U.S. at 484.
[40] *Id.*

Here, Mr. Moore pled guilty to third-degree murder following the Pennsylvania Court of Common Pleas vacating his conviction for second-degree murder. While the second-degree conviction was terminated by post-conviction relief, Mr. Moore's guilty plea to third-degree murder resulted in a subsequent valid conviction, which precludes a finding of favorable termination. Without favorable termination, Plaintiff cannot plead factual content that allows the court to draw the reasonable inference that Defendants are liable for malicious prosecution. Moreover, the fact that the charge he pled guilty to was not part of the original accusations brought by the Commonwealth is irrelevant because the criminal proceeding, as a whole, did not terminate in Mr. Moore's favor. Accordingly, his claims for malicious prosecution in Counts I and VI will be dismissed.

2. Remaining Claims

Defendant Walsh also argues that the *Heck* doctrine bars Mr. Moore's entire Complaint, including his claims of deprivation of liberty without due process of law and denial of a fair trial, civil conspiracy, and failure to intervene. Under *Heck*, these claims are not cognizable under §1983 if they challenge the validity of Mr. Moore's remaining third-degree conviction.

Neither the Supreme Court nor the Third Circuit have considered a so-called "two conviction" case, as presented here.[41] In absence of controlling precedent, several courts within the Eastern District of Pennsylvania have followed *Poventud v. City of New York*,[42] when analyzing "two-conviction" cases.[43]

---

[41] *Gaskins v. City of Philadelphia*, 806 F. Supp. 3d 507, 517 (E.D. Pa. 2025) (noting cases currently pending where the Third Circuit may "engage this issue directly in the near term").

[42] 750 F.3d 121 (2d Cir. 2014).

[43] *Wagner v. City of Philadelphia*, No. CV 25-CV-1450, 2026 WL 789450, at *6-7 (E.D. Pa. Mar. 20, 2026); *Dennis v. City of Philadelphia*, 379 F. Supp. 3d 420, 430 (E.D. Pa. 2019); *Gladden v. City of Philadelphia*, No. CV 21-4986, 2022 WL 605445, at *5 (E.D. Pa. Feb. 28, 2022); *Maldonado v. City of Philadelphia*, No. CV 22-3474, 2023 WL 4685967 (E.D. Pa. July 21, 2023).

*Poventud* is instructive. There, the Second Circuit Court of Appeals held that a due process violation based on a *Brady v. Maryland*[44] violation does not depend on "factual innocence, but rather what would have been proven absent the violation."[45] The presence of a constitutional *Brady* violation "need not be at odds with his guilt," because the remedy for a *Brady* violation is a new trial in which the withheld material is disclosed and provided to the defendant.[46] This reasoning falls in line with *Heck*'s explicit language that "[a] district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."[47] While favorable termination is a required element of malicious prosecution, it is not a required element for every § 1983 claim arising out of a criminal case. Thus, the Court must look to the specific claims to determine whether the Counts necessarily imply the invalidity of Mr. Moore's plea.

First, Mr. Moore claims that Defendants deprived him of liberty without due process and denied him a fair trial by fabricating evidence, withholding material exculpatory and impeachment evidence, and deliberately failing to conduct a constitutionally adequate investigation. As in *Poventud*, this count alleges a violation of *Brady* for withholding evidence. "Because [Mr. Moore] was aware of the undisclosed exculpatory material prior to his guilty plea, his plea could not have implicated the constitutional violations at issue in his trial. Following *vacatur* of his conviction, a favorable judgment in this § 1983 action would not render invalid any subsequent, plea-based judgment against [Mr. Moore]."[48] The remedy for a *Brady*

[44] 373 U.S. 83 (1963).
[45] *Poventud*, 750 F.3d at 134.
[46] *Id*. at 133.
[47] *Heck*, 512 U.S. at 487.
[48] *Poventud*, 750 F.3d at 136.

violation does not involve invalidation of Mr. Moore's eventual conviction, so he may proceed on a due process claim for withholding material exculpatory and impeachment evidence.

Several courts in this Circuit have extended the reasoning of *Poventud* beyond *Brady* claims to other due process claims in "two conviction" cases, including to fabrication of evidence charges.[49] As with a due process claim for withholding evidence at Mr. Moore's trial, a due process claim for fabricating evidence does not invalidate Mr. Moore's subsequent conviction. Further, any claim regarding the lack of an adequate investigation would also not invalidate the second conviction.

*Heck* does not bar Mr. Moore's due process claims, and it does not bar the Complaint in its entirety. While neither party discussed *Heck's* application to Counts III and IV in the Motion to Dismiss, the Court notes that neither the civil conspiracy count nor failure to intervene counts are barred by *Heck*. In order to state a claim for civil conspiracy under § 1983, Mr. Moore must plead "(1) the existence of a conspiracy involving state action; and (2) a deprivation of civil

---

[49] See *e.g., Wagner v. City of Philadelphia*, No. CV 25-CV-1450, 2026 WL 789450, at *6-7 (E.D. Pa. Mar. 20, 2026); *Dennis v. City of Philadelphia*, 379 F. Supp. 3d 420, 430 (E.D. Pa. 2019) (denying motion to dismiss deliberate deception and fabrication of evidence claims arising from prosecution resulting in first conviction that was vacated, despite subsequent plea of no contest to third degree murder), *aff'd in part, appeal dismissed in part*, 19 F.4th 279 (3d Cir. 2021) (declining to rule on *Heck* issue); *Gladden v. City of Philadelphia*, No. 21-4986, 2022 WL 605445, at *6 (E.D. Pa. Feb. 28, 2022) (denying motion to dismiss arguing that fabrication of evidence and deliberate deception claims were barred by *Heck* when plaintiff pleaded no contest to third-degree murder after vacated conviction); *Carson v. City of Philadelphia*, No. 23-2661, 2024 WL 3792223, at *4 (E.D. Pa. Aug. 13, 2024) (denying motion to dismiss fabrication of evidence and withholding of impeachment/exculpatory evidence claims because they did not imply invalidity of second conviction); *Natividad v. Raley*, No. 22-5061, 2025 WL 1550740, at *5 (E.D. Pa. May 30, 2025) (rejecting argument that claims of fabricating evidence and deliberate deception were *Heck*-barred where plaintiff pleaded to third-degree murder, an offense "with essentially the same elements and supported by the same facts offered at his first-degree trial"); *White v. City of Philadelphia*, No. 23-4538, 2025 WL 3706949, at *4 (E.D. Pa. Dec. 22, 2025) (holding that coercion, fabricated evidence, and withholding of *Brady* material claims were not *Heck*-barred); *Maldonado v. City of Philadelphia*, No. 22-3474, 2023 WL 4685967, at *7 (E.D. Pa. Jul. 21, 2023) (declining to dismiss fabrication of evidence claim on *Heck* ground because compliant raised plausible inference that faulty evidence was not "foundational to his second conviction"); *Bey v. Hediger*, No. 24-702, 2025 WL 2636424, at *5-7 (W.D. Pa. Sept. 12, 2025) (rejecting argument that destruction of evidence, fabrication of evidence, *Brady*, and coercion claims were *Heck*-barred after subsequent plea to third-degree murder which was "based upon the same underlying conduct" as the preceding invalidated conviction).

rights in furtherance of the conspiracy by a party to the conspiracy."[50] If challenging the underlying alleged civil rights violation does not violate *Heck*, then challenging a conspiracy to violate the civil rights will not invalidate Mr. Moore's second conviction. The civil conspiracy count is not barred by *Heck*.

The Third Circuit has held that "[i]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation . . . takes place in his presence, the officer is directly liable under Section 1983."[51] Here, Mr. Moore's failure to intervene claim includes arguments that the individual officers failed to intervene in the alleged due process violations involved in Mr. Moore's initial conviction. As the alleged due process claims do not imply the invalidity of Mr. Moore's current conviction, a failure to intervene to prevent the due process violations similarly do not imply the invalidity of Mr. Moore's current conviction. Accordingly, the failure to intervene claim is not barred by *Heck*.

**B. Qualified Immunity**

Next, Defendant Walsh moves to dismiss the inadequate investigation and failure to intervene claims against him, arguing that he is entitled to qualified immunity on these counts.

"A police officer is entitled to qualified immunity under § 1983 unless the plaintiff shows that the officer violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"[52] To determine whether an officer is entitled to qualified immunity, courts apply a two-prong test.[53] The Court evaluates "(1) whether the plaintiff

---

[50] *Oliver v. City of Philadelphia*, Civil Action No. 25-197, 2025 WL 1902298, at *9 (E.D. Pa. July 9, 2025) (citation omitted).
[51] *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002) (quoting *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986)).
[52] *Lozano v. New Jersey*, 9 F.4th 239, 245 (3d Cir. 2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).
[53] *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021).

sufficiently alleged the violation of a constitutional right, and (2) whether the right was clearly established at the time of the official's conduct."[54]

First, Defendant Walsh argues that Mr. Moore's claim for inadequate investigation must be dismissed because he argues there is no constitutional right to a police investigation. The Court need not decide whether there is such a constitutional right, because the second prong resolves the inquiry. "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[55] Thus, at the time of the alleged conduct, the existing caselaw must give the official "fair warning" of the unconstitutionality of his actions.[56]

At the time of Mr. Moore's trial and initial conviction, it was not clearly established whether an individual had a right to an adequate criminal investigation against them.[57] While certain cases recognize there was a clearly established right to a criminal investigation absent constitutional violations, these cases do not clearly establish an independent right to a certain adequacy of investigation.[58] Because the right to an adequate investigation was not clearly established at the time of Defendant Walsh's alleged actions, the Motion to Dismiss will be granted as to this claim. However, Mr. Moore correctly notes that he alleges alternative bases for the constitutional violation in Count II for which Defendant Walsh is not entitled to qualified

---

[54] *Bland v. City of Newark*, 900 F.3d 77, 83 (3d Cir. 2018) (internal quotations omitted).
[55] *Taylor v. Barkes*, 575 U.S. 822, 825 (2015).
[56] *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).
[57] *See Johnson v. Logan*, 721 F. App'x 205, 208 n.9 (3d Cir. 2018) ("We note, without deciding, that we have significant doubts about whether there is an independent substantive due process right to be free from a reckless investigation."); *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995) ("whether the officers conducted the investigation negligently is not a material fact" in determining whether a constitutional violation occurred); *Wallace v. City of Philadelphia*, 2025 WL 2935248, at *11 (E.D. Pa. Oct. 15, 2025) ("Courts in this district have consistently held that there is no constitutional right to a police investigation." (collecting cases)); *Ogrod v. City of Philadelphia*, 598 F. Supp. 3d 252, 268 (E.D. Pa. 2022) ("[T]here is no constitutional right to a police investigation and the Third Circuit has not recognized a cause of action arising out of an allegedly deficient investigation.").
[58] *See Orsatti*, 71 F.3d at 484 ("The obligation of local law enforcement is to conduct criminal investigations in a manner that does not violate the constitutionally protected rights of the person under investigation.").

immunity. Thus, Count II's claim for failure to conduct a constitutionally adequate investigation will be dismissed and the remaining claims in Count II (fabrication of evidence and withholding material exculpatory and impeachment evidence) will not be dismissed.

Finally, Defendant Walsh argues that he is entitled to qualified immunity on Mr. Moore's failure to intervene claim. While, as discussed, the Third Circuit recognizes a cause of action against a police officer who "fails or refuses to intervene when a constitutional violation . . . takes place in his presence,"[59] there is no clearly established standalone right to intervention by officers "to prevent false arrest, malicious prosecution, false imprisonment, and deprivation without due process of law."[60] Accordingly, such a right was not clearly established at the time of Mr. Moore's arrest, Defendant Walsh is entitled to qualified immunity on the failure to intervene claim. His Motion to Dismiss will be granted as to Count IV.

## IV. CONCLUSION

For the reasons stated herein, the Motion to Dismiss will be granted in part as to the malicious prosecution and failure to intervene counts, granted as to the failure to conduct a constitutionally adequate investigation claim, and denied in all other respects. Accordingly, Counts I, IV, and VI will be dismissed against Defendant Walsh. An order will be entered.

---

[59] *Mensinger*, 293 F.3d at 650 (quoting *Byrd*, 783 F.2d at 1007).

[60] Compl. ¶ 116 [Doc. No. 1]; *Handy v. City of Philadelphia*, 2025 WL 2618956, at *5 (E.D. Pa. Sept. 10, 2025); *Onyiah v. City of Philadelphia*, 660 F. Supp. 3d 407, 416 (E.D. Pa. 2023); *Ogrod*, 598 F. Supp. 3d at 273; *Outlaw v. City of Philadelphia*, No. 21-1290, 2021 WL 3471168, at *7 (E.D. Pa. Aug. 6, 2021).